IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANDERSEN MANUFACTURING INC., an Idaho corporation,<br><br>      Plaintiff,<br><br>    v.<br><br>WYERS PRODUCTS GROUP, INC., a Colorado corporation,<br><br>      Defendant. | Case No. 4:16-CV-51-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it the claim construction briefs of the parties in this patent infringement action. The Court held oral argument and took the matter under advisement. This decision sets forth the Court's construction of disputed language in the claims at issue.

## LITIGATION BACKGROUND

Plaintiff Andersen claims that defendant Wyers is making a trailer hitch that infringes three patents held by Andersen. The patents will be referred to as the '99, '412, and '510 patents. The '412 and '510 patents are continuation patents of the original '99 patent. The patents claim methods of making aluminum drop hitches by extruding an aluminum alloy through a die to form a piece of aluminum that can be cut into drop bars. The drop bar is inserted into a metal sleeve attached to the towing vehicle's frame and "drops" the connection apparatus below the bumper, allowing the trailer's receiving

apparatus to have a level connection. The patents state that the extruded aluminum hitches are strong yet light-weight, and will not rust like existing steel hitches.

After the patents were issued, Wyers sought an ex parte re-examination of all 18 claims of the '99 patent. On February 27, 2016, the Patent and Trademark Office rejected all 18 claims on the ground that they were obvious under the prior art. *See PTO Decision (Dkt. No. 62-2).* That decision is presently on appeal.

The parties dispute the meaning of ten phrases contained in the claims of two of the three patents. The Court will examine each of the disputed phrases after reviewing the legal standards governing claim construction.

## LEGAL STANDARDS

Claim construction is a matter of law. *Markman v. Westview Instr., Inc.,* 517 U.S. 370, 372 (1996). Terms contained in claims are "generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312. In determining the proper construction of a claim, a court begins with the intrinsic evidence of record, consisting of the claim language, the patent specification, and, if in evidence, the prosecution history. *Id*. at 1313. "The appropriate starting point . . . is always with the language of the asserted claim itself.*" Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186 (Fed. Cir. 1998).

However, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning if the special definition of the term is clearly

**Memorandum Decision & Order – page 2**

stated in the patent specification or file history. *Vitronics,* 90 F.3d at 1582. The specification may also reveal that the patentee has intentionally disclaimed or disavowed certain portions of a claim, and the claims must be read consistently with that limitation. *Phillips*, 415 F.3d at 1316.

Finally, the Court may consider the prosecution history of the patent, if in evidence. *See Southwall Technologies, Inc. v. Cardinal IG Co*., 54 F.3d 1570, 1576 (Fed. Cir. 1995). The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution. *Id.*

In most situations, analysis of this intrinsic evidence alone will resolve claim construction disputes. *See Vitronics*, 90 F.3d at 1583. Courts should not rely on extrinsic evidence in claim construction to contradict the meaning of claims discernable from examination of the claims, the written description, and the prosecution history. *See Pitney Bowes, Inc. v. Hewlett-Packard Co*., 182 F.3d 1298, 1308 (Fed. Cir. 1999). However, it is entirely appropriate "for a court to consult trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field." *Id.* Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips,* 415 F.3d at 1317. All extrinsic evidence should be evaluated in light of the intrinsic evidence. *Id.* at 1319.

## ANALYSIS

### "Hitch Adapter"

**Memorandum Decision & Order – page 3**

Both parties believe that the term "hitch adapter" would benefit from some further definition because it is not a term in common usage. The hitch adapter itself is depicted in Figure 4 of the '412 patent, identified by the number 60 in that drawing, set forth below:



To a layman's view, the "hitch adapter" is a metal sleeve, permanently attached to the towing vehicle, into which is inserted the hitch components like the drop bar (number 30) and ball (number 40). Andersen's proposed construction is consistent with this simple description: "A device mounted to a towing vehicle and configured to receive a hitch component."

In contrast, Wyers proposes defining "hitch adapter" as a "hollow tube mounted to a towing vehicle and configured to receive a drop bar." The word "tube" commonly connotes a round or cylindrical shape. That meaning would exclude all the embodiments disclosed in the Figures – for example, Figure 4 above depicts the hitch adapter as having

**Memorandum Decision & Order – page 4**

a square (or perhaps slightly rectangular) opening. A claim construction that would eliminate an embodiment shown in the patent is "rarely, if ever, correct." *See Rexnord Corp. v. Laitram Corp.,* 274 F.3d 1336, 1342 (Fed. Cir. 2001). Pursuant to this legal standard – and given Wyers' failure to explain why it chose the word "tube" – the Court will reject Wyers' proposed construction.

The Court does agree with both parties that the term "hitch adapter" would benefit from some additional definition because it is not a term in common usage. Andersen's proposed construction is simple, and provides the additional definition that would be helpful to a jury. The Court will therefore adopt that construction.

**"Stepped"**

The claims language describes a "stepped drop bar." An embodiment is depicted in figure 5, set forth below:



Wyers argues that describing figure 5 as stepped is "nonsensical[]" because "there is nothing step-like about Fig. 5 . . . ." *See Wyers' Brief (Dkt. No. 47)* at pp. 10-11. The Court disagrees. Figure 5 could be likened to a ladder with steps, and one of the

definitions of the word "step" is "a rung of a ladder," *see Webster's Third International Dictionary (1981)* at p. 2236.

Wyers also argues that the word "stepped" must be limited to figures 1 & 2 set forth below:



Wyers argues that because the term "stepped" was added during the patents' prosecution, it was designed to limit the claim language to Figures 1 & 2. But Wyers submits nothing from the prosecution history that would support that speculation. Because Figure 5 is "stepped," it would make no sense to limit the term "stepped" to Figures 1 & 2. Moreover, the Federal Circuit has repeatedly held that the claims are not limited solely to the depictions contained in the figures, or embodiments: "[W]e do not read limitations from the embodiments in the specification into the claims." *Hill-Rom Servs. Inc. v. Stryker Corp.,* 755 F.3d 1367, 1371 (Fed. Cir. 2014).

The Court agrees with Andersen that the word "stepped" has an ordinary meaning that needs no elaboration, and will therefore reject Wyers' proposed construction.

**"A profile in a shape of a drop bar"**

The parties seek construction of a phrase within Claim 1 of the '510 patent. Claim 1 is set forth in part below, with the disputed language that the parties want the Court to construe in italics:

> What is claimed is:
> 1. A method for manufacturing a drop bar used in towing, the method comprising:
>    extruding aluminum through a die to form *a profile in a shape of a drop bar;*
>    cutting the drop bar profile to provide one or more drop bars that are configured to be used for towing;
>    . . . .

*See Exhibit C (Dkt. No. 10).* In the italicized phrase, one term – "drop bar" – was the subject of a stipulation by the parties, stating that the term "drop bar" in claims 1, 14, 19, and 21 of the '412 patent, and claims 1, 5, and 13 of the '510 patent, means "a hitch component that connects a hitch adapter to a trailer where the hitch adapter and the part of the trailer that receives the hitch are at different heights." *See Claim Construction and Prehearing Statement (Dkt. No. 40).*

Andersen argues that with this agreed-upon definition of "drop bar," the other terms – "profile" and "shape" – have ordinary meanings that require no elaboration. Wyers disagrees and argues that these two terms, in conjunction with the term "drop bar," should be defined as "a removable mounting rod having a first level segment sized for insertion into a receiver hitch, a sloping transition segment, and a tow end that is level and lower than the first level segment."

**Memorandum Decision & Order – page 7**

Wyers came up with this proposed construction by "convert[ing] the drawings in Figures 1 & 2 into the above words." *See Wyers Brief (Dkt. No. 46) at p. 16.*[1]  But as discussed above, the embodiments do not define the full scope of the claims.  *Hill-Rom,* 755 F.3d at 1371 (Fed. Cir. 2014).  Moreover, the "sloping transition" language of Wyers' proposal would preclude the non-sloped "stepped" embodiment of Figure 5, violating the rule cited above in *Rexnord,* 274 F.3d at 1342.

Wyers' responds that if its proposed construction is not adopted, the claim language could be read in such a broad manner as to cover any extruded shape.  More specifically, Wyers claims that its extrusion process produces "a ubiquitous block shaped like a flat brick" or "ubiquitous I-beam" that is then subjected to substantial machining before it becomes a final product.  *See Wyers' Brief (Dkt. No. 47) at p. 2.*  The product extruded by Wyers' process is set forth below – the extruded product is on the right, and the final machined product is on the left.



---

[1] Wyers' counsel confirmed this at oral argument when he answered "correct" to the Court's question whether he had "taken the picture and given words to it to describe it in accordance with that drawing?"  *See Transcript (Dkt. No. 60) at p. 27.*

**Memorandum Decision & Order – page 8**

This extruded product – the brick or I-beam – "could be the starting point of any number of different products as it is not in the shape of any product," according to Wyers. *Id.* Arguing that the claim language cannot be so broad as to cover an extruded brick, Wyers drafted its proposed claim construction to ensure that it would not cover an extruded brick or I-beam, and would instead cover an extruded product like that depicted in Figures 1 & 2.

However, Wyers' proposed construction runs headlong into the Federal Circuit's rule that forbids a court from tailoring a claim construction to either cover or exclude the dimensions of the accused product or process. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1331 (Fed. Cir. 2006). In essence, Wyers is raising an infringement issue, not a claim construction issue. Whatever link Wyers' argument may have had to claim construction issues was severed when Andersen conceded at oral argument that a "flat brick" is "not something that's been extruded in a profile in the shape of a drop bar, and we have never asserted it is. That's not what we're talking about here at all." *See Transcript (Dkt. No. 60)* at p. 49.

Andersen's position was further confirmed during a colloquy between Andersen's counsel and the Court. In this discussion, the Court and counsel referred to the image set forth immediately above, and specifically to the extruded product on the right, prior to any machining:

> The Court: So if we get to trial, I have defined the terms "profile in the shape of a drop bar" the way that you're requesting, will the defendants be free to argue that the image here that what they are doing – if they were doing exactly what you have portrayed here, that there is

>     nothing about the profile of this item on the right that makes it in the shape of a drop bar, and therefore it is not infringing?
> Andersen: Correct. They are free to argue that.

*See Transcript, supra* at p. 51-52. These representations by Andersen relieve Wyers' fear that if the Court adopted Andersen's proposed claim construction of Claim 1, Wyers would be precluded from arguing at trial that its extruded brick or I-beam was not "a profile in a shape of a drop bar." Wyers will be free to make that argument under Andersen's proposed construction.

Evaluating Andersen's proposal, the Court agrees that the terms "profile" and "shape" are common terms that need no elaboration, and that the term "drop bar" should be given the definition agreed-upon by the parties. The Court will therefore adopt Andersen's proposed claim construction and reject Wyers proposal.

**"A profile in the shape of an extended drop bar"**

The parties seek construction of a phrase in Claims 5 and 13 of the '510 patent: "A profile in a shape of an extended drop bar." This phrase is identical to the phrase just considered except for the additional word "extended." The Court will not repeat its analysis of the issues raised above – which were raised as to this phrase as well – but will focus instead on the single new term "extended."

Wyers argues that the word "extended" is meaningless because it was added during the patents' prosecution "to point to the profile" in Figures 1 & 2. *See Wyers' Brief, supra,* at p. 15. Wyers' point is that the word "extended" should be dropped because Figures 1 & 2 control, and they only depict "a profile in the shape of a drop bar," not an *extended* drop bar.

**Memorandum Decision & Order – page 10**

But Wyers' construction would violate two rules. First, as the Court has held above, claims are not limited to the embodiments. There is nothing in the prosecution history indicating that the addition of the word "extended" was intended to limit the claims to the depictions in Figures 1 & 2. Second, words of a claim must not be ignored. *ERBE Elektromedizin GmbH v. Canady Technology LLC,* 629 F.3d 1278, 1286 (Fed. Cir. 2010). While it is true that under some circumstances surplusage may exist in some claims, *id.,* Wyers offers nothing to persuade the Court to ignore this term.

Andersen's proposal would not add any elaboration to the terms "extended," "profile," and "shape," and would use the stipulated definition of drop bar. The Court finds that construction proper and will adopt it.

**"An aluminum member of the stepped drop bar having a profile"**

The issues raised here have been fully addressed above. Pursuant to that analysis, the Court will adopt Andersen's proposed construction that adds no elaboration to the terms "aluminum member," "stepped," and "profile." In addition, the Court will adopt the stipulated definition of the term drop bar.

**(1) "Coupling Mechanism"; (2) "an incremental height adjustment"; (3) "a receiving portion that is configured to receive a ball"; & (4) "configuring a receiving portion of a first drop bar to receive a ball."**

For these four phrases, Wyers proposes claim constructions that would limit the meaning of the phrases to particular embodiments shown in figures contained in the patents. As discussed, the caselaw rejects such a limitation. *Hill-Rom,* 755 F.3d at 1371. All four of these terms have an ordinary meaning, and no further elaboration is necessary

Memorandum Decision & Order – page 11

to understand their meaning. The Court therefore rejects Wyers attempt to redefine these four terms.

**Motion to Submit Supplemental Brief**

About three weeks after the oral argument in this case, Wyers filed a motion to submit a supplemental brief and further materials. The brief is 12 pages long, and the materials consist of six items from the PTO. These materials are late under Local Patent Rule 4.5, and thus Wyers must show good cause pursuant to Federal Rule of Civil Procedure 16(b)(4). Wyers argues that good cause exists because the brief and materials address questions asked by this Court at oral argument. But the Court did not inquire into new areas that require supplementation, but was instead seeking clarification or understanding of points already made. That explains why Wyers' proposed brief largely repeats the arguments it made previously, simply couched in slightly different terms. No showing of good cause has been made and the motion will therefore be denied.

**ORDER**

In accordance with the terms of the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the following definitions shall govern this litigation:

(1) <u>Hitch Adapter</u>:  A device mounted to a towing vehicle and configured to receive a hitch.
(2) <u>Drop Bar</u>:  A hitch component that connects a hitch adapter to a trailer where the hitch adapter and the part of the trailer that receives the hitch are at different heights.

IT IS FURTHER ORDERED, the following terms shall carry their ordinary meaning without further definition: (1) stepped; (2) coupling mechanism; (3) an

**Memorandum Decision & Order – page 12**

incremental height adjustment; (4) a receiving portion that is configured to receive a ball; (5) an aluminum member; (6) profile; (7) shape; and (8) extended.

IT IS FURTHER ORDERED, that the motion for leave to submit a supplemental brief (docket no. 57) is DENIED.

DATED: May 8, 2017

B. Lynn Winmill
Chief Judge
United States District Court